**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

BRITTANY WESTLEY, REBECCA
LAMUNYAN, SARAH COY, and
PATRICIA OROPEZA,

    Plaintiffs,

v.                                               **CASE NO.: 8:18-cv-172-T-24TGW**

LOVE PET GROOMING SALON, INC.,
a Florida corporation, and
INGRID KOLARSICK (a/k/a
INGRID MUNOZ), individually,

    Defendants.
_____/

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendants, LOVE PET GROOMING SALON, INC. ("LOVE PET"), and INGRID KOLARSICK (a/k/a INGRID MUNOZ) ("OWNER"), individually, (collectively referred to herein as "DEFENDANTS") by and through their undersigned counsel, pursuant to Rule 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, and hereby respectfully move this Court for entry of an Order dismissing Plaintiffs, Brittany Westley's, Rebecca Lamunyan's, Sarah Coy's, and Patricia Oropeza's (collectively referred to herein as "PLAINTIFFS"), entire Third Amended Complaint ("Complaint") [Doc. 34], with prejudice, as this Court lacks subject matter jurisdiction, and in support thereof, DEFENDANTS state the following:

**SUMMARY OF RELIEF**

1. PLAINTIFFS have filed a Complaint against DEFENDANTS alleging violations of the Florida Minimum Wage Act (Fla. Const. Art. X Sec 24 and Section 448.110") ("FMWA") and the Fair Labor Standards Act (29 U.S.C. §§ 201 et seq.) ("FLSA"), specifically section 207 for failure to pay overtime wages (Count I), section 206 for failure to pay minimum wages (Count II), unpaid minimum wages under FMWA (Count III), and for unjust enrichment (Count IV), seeking that supplemental jurisdiction be extended over their related state law claims under 28 U.S.C. § 1367.

2. Assuming all of the allegations in PLAINTIFF'S' Complaint are true for purposes of this Motion to Dismiss, and in reliance upon facts outside the Complaint that this Court may consider when evaluating subject matter jurisdiction at this early stage, this Court does not have subject matter jurisdiction for this case to proceed.

3. Notably, at all times relevant hereto, PLAINTIFFS have not and cannot demonstrate that the FLSA applies to LOVE PET under either an enterprise or individual coverage theory and, thus, all of PLAINTIFFS' FLSA claims (Counts I – II) should be dismissed with prejudice.

4. Specifically, under an enterprise theory, LOVE PET has not had an annual gross volume of sales made or business done of $500,000 or more, at all times material hereto and since LOVE PET's incorporation in 2014. This threshold must be established and, therefore, PLAINTIFFS' FLSA claims (Counts I-II), based upon an enterprise coverage theory, should be dismissed be prejudice.

5. Similarly, under an individual theory, PLAINTIFFS' Complaint, on its face, fails to state a cause of action under the FLSA and, thus, PLAINTIFFS' FLSA claims against LOVE PET, under an individual coverage theory, should be dismissed with prejudice.

6. In addition, if neither PLAINTIFFS' Complaint nor facts outside the Complaint demonstrate that LOVE PET is not subject to the obligations of the FLSA under an enterprise or individual coverage theory, PLAINTIFFS' FLSA claims (Counts I-II) cannot extend to LOVE PET's OWNER, and thus, those claims should also be dismissed, with prejudice.

7. Finally, if this court's jurisdiction does not extend over the PLAINTIFFS' alleged FLSA claims, this court cannot exercise supplemental jurisdiction over PLAINTIFFS' unjust enrichment claim (Count IV), and PLAINTIFFS entire Complaint should be dismissed, with prejudice. Or, in the alternative, PLAINTIFFS' unjust enrichment claim should be remanded to state court.

**RELEVANT FACTS**

8. LOVE PET is a local, family owned, full service pet groomer located in Tampa serving the Carrollwood, Carrollwood Village, Original Carrollwood Westchase and Citrus Park areas.[1]

9. LOVE PET was incorporated on or about August 11, 2014, and its principal place of business has been and is 4567 Gunn Highway, in Tampa, Florida 33624.[2]

---

[1] *See* Affidavit of OWNER, attached hereto and incorporated herein as **Exhibit A.**
[2] *Id.*

10. Although DEFENDANTS dispute that PLAINTIFFS were misclassified as independent contractors, for purposes of this Motion to Dismiss and assuming all facts are true in the Complaint, PLAINTIFFS, worked for LOVE PET, for very short periods and as follows:

| | |
|---|---|
| SARAH COY: | Approx. 4 months (Approx. Oct. 2016 – Feb. 2017) |
| REBECCA LAMUNYAN: | Approx. 4 months (Approx. Oct. 2016 – Feb. 2017) |
| PATRICIA OROPEZA: | Approx. 4 months (Approx. Oct. 2016 – Jan. 2017 & March 2018 to April 2018)[3] |

11. In paragraph 1 of the Complaint, PLAINTIFFS allege, generally, as follows:

This is an action to recover, among other things claimed below, unpaid overtime wages, unpaid minimum wages, liquidated damages, and attorneys' fees and costs pursuant to the FMWA and the FLSA on behalf of Ms. Westley, and the FLSA on behalf of Ms. LaMunyan, Ms. Coy and Ms. Oropeza.

12. In paragraph 10 of the Complaint, PLAINTIFFS allege that "[t]his Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

13. In paragraph 12 of the Complaint, PLAINTIFFS allege that

This is an action in excess of $15,000 (exclusive of fees and interest) by Plaintiffs against their former employer for violation of the FMWA and FLSA, and for unjust enrichment under Florida law; and, Plaintiffs seeks damages and their reasonable attorney's fees and costs. Plaintiffs requests supplemental jurisdiction be extended over their related state law claims under 28 U.S.C. § 1367.

14. In paragraphs 15 and 16 of the Complaint, PLAINTIFFS allege that

At all times relevant herein, Love Pet was an employer within the meaning of the meaning of the FMWA.

---

[3] *See* Paragraphs 21-23 of PLAINTIFFS' Complaint.

Love Pet was an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d); Love Pet was an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r); and, Love Pet was an enterprise engaged in commerce or the production of goods for commerce within the meaning of Section 3(s) of the FLSA because it has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have moved in or were produced for commerce by any person, 29 U.S.C. § 203(s).

15. In paragraph 14 of the Complaint, PLAINTIFFS allege that

Defendant LOVE PET GROOMING SALON, INC. ("Love Pet"), is a Florida corporation with its principal place of business at 4567 Gunn Hwy, Tampa, FL 33624 (*see also* http://www.lovepetgroomingsalon.com).

16. In paragraphs 17 through 21 of the Complaint, PLAINTIFFS

attempt to allege how LOVE PET is engaged in interstate commerce.

17. In paragraph 22 of the Complaint, PLAINTIFFS allege generally that:

At all times relevant herein, Plaintiffs had "Individual Coverage" via their job duties and their relationship with interstate commerce (as described in the preceding paragraphs 17-21).

18. In paragraph 23 of the Complaint, PLAINITFFS allege that their job

duties included, but are not limited to, the following work related to the LOVE PET

interstate commerce:

a) handling and selling goods or materials that have been moved in interstate, *e.g.*, dogs, cats, pet shampoos and conditioners, bandanas scarfs, brushes, perfumes, collars, clippers, shears, scissors, grooming supplies and cleaning supplies;
b) regularly making and receiving interstate telephone calls, text messages, and email inquiries;
c) servicing or grooming pets often owned by seasonal, interstate travelers (*e.g.*, Florida's "snowbirds");
d) purchasing, picking up, or using grooming and cleaning supplies for Love Pet that were manufactured beyond Florida's borders and/or transported interstate;

    e) collecting or receiving payments from interstate seasonal, interstate travelers;
    f) contacting seasonal, interstate travelers, and return customers to schedule visits for their pets;
    g) handling phone calls from out of state persons making reservations for their pets and sometimes arranging for their payments;
    h) making bank deposits; and
    i) receiving payment for goods and services using interstate credit card transactions processed through Defendants' point of sale system and receiving tips from those interstate credit card transactions.

19. In paragraph 25 of the Complaint, PLAINTIFFS allege that

> Ms. Munoz is an "employer," as defined under the FLSA, 29 U.S.C. § 203(d), as she has operational control over Love Pet and she is directly involved in decisions affecting employee compensation and hours worked by employees, such as the Plaintiffs. Moreover, she controlled and still controls the purse strings of Love Pet.

20. Aside from these general allegations, PLAINTIFFS' complaint is devoid of any specific allegation that LOVE PET's annual gross revenue, at all times material hereto, was in excess of $500,000.00 per annum.

21. In fact, PLAINTIFFS will not be able to dispute this fact because LOVE PET'S tax returns, for all times relevant hereto, and OWNER's Affidavit filed in support of this Motion demonstrate LOVE PET has never met said threshold for enterprise coverage under the FLSA to apply to DEFENDANTS.[4]

22. In addition, PLAINTIFFS' Complaint fails to establish individual coverage for the reasons described below.

---

[4] *See* **Exhibit A**, with LOVE PET's 2014, 2015, and 2016 Tax Returns attached thereto as Composite Exhibit 1.

23. Accordingly, PLAINTIFFS have not and cannot demonstrate this Court has subject matter jurisdiction and PLAINTIFFS' entire action against DEFENDANTS should be dismissed with prejudice.

24. DEFENDANTS have retained Iurato Law Firm, PL to defend this action and has and is obligated to pay Iurato Law Firm, PL, a reasonable attorneys' fee and costs for its service.

## MEMORANDUM OF LAW

### I.  MOTION TO DISMISS STANDARD AND SUBJECT MATTER JURISDICTION

The District Court is under an initial duty to review PLAINTIFF'S' complaint to determine whether the court has subject matter jurisdiction "at the earliest possible stage in the proceedings".[5] "Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking".[6] The party invoking a federal court's jurisdiction bears the burden of demonstrating that the matter falls within the court's subject matter jurisdiction.[7] Interpreting FLSA subject matter requirements, the Eleventh Circuit has explained:

> The FLSA requires an employer to pay an employee overtime compensation for any hours worked in excess of forty in a given workweek, if that employee "is engaged in commerce or in the production of goods for commerce ['individual coverage'], or is employed in an enterprise engaged in commerce or in the production of goods for commerce ['enterprise coverage']." 29 U.S.C. § 207(a). Accordingly, an employee bringing a claim for unpaid overtime compensation must establish either individual or enterprise coverage. *Scott v. K. W. Max Invs., Inc.*, 256 Fed. Appx. 244, 247 (11th Cir. 2007).

---

[5] *Univ. of South Ala. V. American Tobacco*, 168 F. 3d 405, 409 (11th Cir. 1999).
[6] *Id*.
[7] *Makro Capital of Am., Inc. v. UBS AG*, 436 F. Supp. 2d 1342, 1345 (S.D. Fla. 2006).

Attacks on subject matter jurisdiction take one of two forms: "facial attacks" or "factual attacks."[8]. A facial attack requires that the court review the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction.[9] During this review, the allegations of the complaint are taken as true.[10] " 'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.' "[11]

For purposes of this Motion to Dismiss, where PLAINTIFFS have made substantive allegations of fact, DEFENDANTS will assume those facts to be true, except as stated below, and will treat them to be as accurate. However, DEFENDANTS assume those facts to be true solely for the purposes of this Motion to Dismiss. DEFENDANTS do not concede or agree that any of the material factual allegations of the Complaint are accurate. In addition, under either a facial attack or factual attack, PLAINTIFFS have failed to demonstrate this Court has subject matter jurisdiction, and thus, this action must be dismissed with prejudice.

## II.   LACK OF FACTS TO DEMONSTRATE DEFENDANTS ARE SUBJECT TO THE FLSA UNDER <u>ENTERPRISE</u> COVERAGE

---

[8] *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990)
[9] *Id*.
[10] *Id.*
[11] *Id.* (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953 (1980)).

In examining a Rule 12(b)(1) motion, the District Court is empowered to consider matters of fact, even matters of fact which may be in dispute.[12] Where evidence pertinent to subject matter jurisdiction has been submitted by the parties, the court is authorized to look beyond the jurisdictional allegations of the complaint in order to determine whether subject matter jurisdiction actually does exist.[13] It is well settled that in disposing of a Rule 12(b)(1) motion contesting the district court's jurisdiction, the court my consider matters outside the pleadings.[14]

A showing that the corporate entities constitute an enterprise can be the first step in establishing coverage under the FLSA, since coverage is determined in part by an annual dollar volume test.[15] Clearly, Congress intended to exclude the small local merchants such as the corner grocer, the small carpenter, the neighborhood drugstore, the barbershop, the beauty parlor, the butcher, and the baker from the FLSA. Congress did this by creating a "mom and pop" exclusion, requiring that an enterprise have gross sales of a certain amount for the FLSA coverage to exist. At present, that amount is $500,000. [16]

---

[12] *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981), *cert. denied*, 454 U.S. 897, 102 S. Ct. 396, 70 L.Ed.2d 212 (1981)

[13] *Id*.

[14] *Mirabella v. University of Tennessee*, 915 F.Supp. 925, 927 (E.D. Tennessee 1994), *citing Land v. Dollar*, 330 U.S 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947).

[15] *Patel v. Wargo*, 803 F.2d 632 at 634 (11th Cir. 1986), citing *Donovan v. Easton Land & Development, Inc.,* 723 F.2d 1549, 1551 (11th Cir. 1984); *Brennan v. Veteran's Cleaning Service, Inc.,* 482 F.2d 1362 (5th Cir. 1973); *Shultz v. Mack Farland & Sons Roofing Co.*, F.2d 1296 (5th Cir. 1969).

[16] 29 U.S.C. § 203(s)(1)(A)(ii); *Reich v. Gateway Press, Inc.*, 13 F. 3d 685, 694, 695 (3rd Cir. 1994) (citing *Martin v Bedell*, 955 F. 2d 1029, 1032 (5th Cir. 1992.)); *see also Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc.*, 2008 WL 793660, at *1 (M.D. Fla. 2008) quoting *Farrell v. Pike*, 342 F.Supp.2d 433, 439 (M.D.N.C. 2004) (Jurisdictional threshold amount of $500,000.00 was enacted to exclude "Mom and Pop" operations from FLSA coverage); *see, also, Reich v. Gateway Press, Inc., 13 F.3d 685, 694 (3rd Cir. 1994) and Alonso v Garcia,* Fed.Appx 815 (11th Cir. 2005) (A

Here, to establish enterprise coverage under the FLSA, PLAINTIFFS must demonstrate that LOVE PET is an enterprise that:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $ 500,000 (exclusive of excise taxes at the retail level that are separately stated).[17]

LOVE PET is a "mom and pop," local merchant that does not have an annual gross volume of sales made or business done of $500,000, at all times relevant hereto and since its inception in approximately August 2014.[18] Therefore, LOVE PET was and is not an "enterprise" under the FLSA and had no obligation to conform to the FLSA's wage and hour requirements as alleged by PLAINTIFFS. If LOVE PET does not have gross revenues annually in excess of $500,000, at all times relevant hereto, PLAINTIFFS' claims under an enterprise theory under the FLSA fail. The undisputed tax returns and OWNER's Affidavit clearly support that LOVE PET falls under the $500,000 gross annual sales prong, and, therefore, enterprise coverage under the FLSA fails. Accordingly, with no facts demonstrated by PLAINTIFFS as to enterprise coverage, in order to establish the basis for this Court's subject matter jurisdiction, PLAINTIFFS' Complaint under said theory should be dismissed, with prejudice.

### III.   LACK OF FACTS TO DEMONSTRATE DEFENDANTS ARE SUBJECT TO THE FLSA UNDER <u>INDIVIDUAL</u> COVERAGE

---

company does not attain "enterprise coverage" until the year in which its gross sales exceed $500,000.00).

[17] 29 U.S.C. § 203(s)(1)(A)(ii)

[18] *See* Exhibit A.

A Plaintiff always bears the burden of proof that jurisdiction does, in fact, exist.[19] A Plaintiff has the obligation to establish jurisdiction by competent proof.[20] The presumption of correctness that is given to a complaint's allegation falls away on the jurisdictional issue once a Defendant proffers evidence that calls the court's jurisdiction into question.[21] Here, since the DEFENDANTS have presented substantial pertinent evidence to call jurisdiction into question under PLAINTIFFS' FLSA enterprise coverage theory, this Court is left with evaluating PLAINTIFFS' allegations under an FLSA individual coverage theory. But, again, PLAINTIFFS' allegations fall short for subject matter jurisdiction purposes and/or in stating a cause of action. Thus, the presumption of jurisdiction existing from the PLAINTIFFS' bald allegations fall away and this court should dismiss PLAINTIFFS' case, with prejudice, for lack of subject matter jurisdiction.

### *PLAINTIFFS, as Dog Groomers, Were Not Engaged in Commerce*

For individual coverage to apply under the FLSA, PLAINTIFFS must prove each of them were (1) engaged in commerce or (2) engaged in the production of goods for commerce."[22]

In this case, PLAINTIFFS only plausibly allege that they were each "engaged in commerce." Specifically, in Paragraphs 22 and 23 of the Complaint, PLAINTIFFS attempt to allege their possible nexus with interstate commerce.

---

[19] *Menchaca v. Chrysler Credit Corp.*, 613 F 2d 507, 511 (5th Cir. 1980).
[20] *Commodity Trend Service, Inc. v Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998).
[21] *Id*.
[22] *Thorn v. All Restoration Services, Inc.,* 448 F.3d 1264 (11th Cir. 2006) (citing 29 U.S.C. § 207(a)(1)).

In *Perez v. New Auto Image Marketing, Inc.*[23], the court stated:

> To be "engaged in commerce" within the meaning of the FLSA, an employee "must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel."

Assuming PLAINTIFFS' allegations in their Complaint are true, for purposes of this Motion to Dismiss, and specifically Paragraph 23, that PLAINTIFFS, while employed by LOVE PET, were engaged in " …a) handling and selling goods or materials that have been moved in interstate …, c) servicing or grooming pets often owned by seasonal, interstate travelers (e.g., Florida's "snowbirds"), [and] d) purchasing, picking up, or using supplies for Love Pet that were manufactured beyond Florida's borders and/or transported interstate …", these allegations, as a matter of law, do not establish that PLAINTIFFS were "engaged in commerce."

For example, in *Brennen v. Wilson Bldg., Inc.*[24], the court explained that § 203(b) of the FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside

---

[23] 2016 WL7540272 (S.D. Fla. 2016) citing *Thorne v. All Restoration Servs., Inc.,*, 448 F.3d 1264, 1266 (11th Cir. 2006) (citing *McLeod v. Threlkeld*, 319 U.S. 491, 493–98 (1943)); *see also Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1316 (11th Cir. 2011) (citing *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007)); 29 C.F.R. §§ 776.9–776.12. 9 Indirect or sporadic involvement in commerce is insufficient. Id. (emphasis added) (citing *McLeod*, 319 U.S. at 493–98). "The burden of proof lies on employees to establish that they were engaged in interstate commerce, or in the production of goods, and that such production was for interstate commerce." *Joseph v. Nichell's Caribbean Cuisine, Inc.*, 862 F. Supp. 2d 1309, 1312 (S.D. Fla. 2012) (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 121 (1946)).
[24] 478. F.2d 1090, 1094 (5th Cir. 1973).

thereof." The Court in *Brennen* held that elevator operators are engaged in "transportation" because they are an integral part of the interstate journey of goods.[25] The *Brennen* Court found that the interstate journey of the goods continued to flow "beyond the lobby of the office buildings."[26] The Court explained that "without the labor provided by the elevator operators in transporting the mail and freight deliverymen throughout the building, the interstate goods would not be delivered to their intended recipients in each office."[27]Thus, the goods were in transport "until they reached their final destination."[28]

Here, the goods or materials PLAINTIFFS allegedly handled were not still in the stream of interstate commerce; their final destination was LOVE PET. In *Jacksonville Paper Co*[29]., the Court found that the final destination of the goods was not the clientele who ultimately purchased the goods, but the retail stores who ordered the goods.[30] Once the goods reached the retail store they were at their final destination. Similarly, in this instance, the customer who ordered the goods or materials was LOVE PET or its employees, so LOVE PET is the final destination. The goods or materials were no longer in interstate commerce when the PLAINTIFFS utilized or delivered those goods to LOVE PET'S customers.[31] In addition, making bank deposits for DEFENDANTS is not enough

---

[25] 478 F. 2d at 1095.
[26] *Id*.
[27] *Id*.
[28] *Id*.
[29] 317 U.S. at 568
[30] *Brennen*, 478 F.2d at 1095
[31] Following *Thorne* , other courts in the Florida are readily granting summary judgment in favor of employers in FLSA cases, where individual coverage lacks. see, e.g., *Guzman v. Irmadan, Inc., 551 F. Supp. 2d 1368 (S.D. Fla. 2008)* (granting summary judgment on issue when plaintiff was remodeling residences for the employer, even though plaintiff picked up and purchased at retail stores various items needed for work); *Navarro v. Broney Automotive Repairs, Inc., 533 F. Supp. 2d 1223 (S.D. Fla. 2008)* (granting summary judgment in favor of defendants, even though plaintiff

to establish individual coverage.[32] PLAINTIFFS were therefore not engaged in "transportation" under the FLSA.

In addition, PLAINTIFFS' alleged facts, even assuming as true, fail to demonstrate PLAINTIFFS were "directly participating in the actual movement of persons or things in interstate commerce" by "regularly using the instrumentalities of interstate commerce in [their] work."[33] PLAINTIFFS simply worked as pet groomers (like a hair-stylist in a hair salon but for dogs), and the materials with which they worked were clearly at rest at LOVE PET, and no longer in interstate commerce.[34]

---

picked up automobile parts that had traveled in interstate commerce), aff'd, *Navarro v. Broney Automotive Repairs, Inc., Case No. 08-10618, 2008 WL 2315869 (11th Cir., June 6, 2008)* (unpublished decision) (holding that to prove coverage under the FLSA the plaintiff must "participate in the actual movement of persons or things in interstate commerce" and reiterating that goods intended for resale are at rest and are no longer moving in commerce, and thus it is irrelevant to the coverage issue if the plaintiff, buys, uses, or handles retail or wholesale goods that are purchased locally that previously traveled in interstate commerce); *Casseus v. First Eagle, L.L.C., 2008 WL 1782363 (S.D. Fla., Apr. 18, 2008)* (granting summary judgment in favor of defendant and against the restaurant worker plaintiff); *Casanova v. Morales, 2007 WL 4874773, *1 (S.D. Fla., Aug. 3, 2007); Thompson v. Robinson, Inc., 2007 WL 2714091 (M.D. Fla., Sept. 17, 2007)* (granting summary judgment on the issue when the plaintiff did not use instrumentalities of commerce, such as fax machines, telephones, or e-mails, and his only involvement with goods was after they ceased to move in interstate commerce); *Scott v. K.W. Max Investments, Inc., 2007 WL 423080 (M.D. Fla., Feb. 6, 2007)* (holding that the handling of building materials that had traveled in interstate commerce not enough to establish individual coverage, and noting that there was no production of goods, much less goods for commerce, since the employer was a service provider), and there has been one Eleventh Circuit case that has followed *Thorne. Scott v. K.W. Max Investments, Inc., 2007 WL 2850926 (11th Cir., Oct. 2, 2007)* (holding that the plaintiff purchasing goods from a Home Depot that had originally moved through commerce not entitled to invoke individual coverage).

[32] *See Severin v. Pasha's Restaurants, Inc., 2007 WL 967021 (S.D. Fla., Mar. 22, 2007)* (granting summary judgment on the issue— not enough direct involvement in the production of goods for commerce—to an employer when the employee ordered food and supplies, and made bank deposits regularly);

[33] *See Thorne*, 44 F.3d at 1265-66, citing 29 C.F.R. §776.23(d)(2).

[34] *Navarro v. Broney Automotive Repairs, Inc.*, 533 F. Supp. 2d 1223 (S.D. Fla. 2008) (holding that the instate purchase of automotive parts from wholesalers and retailers that were manufactured or traveled outside Florida does not constitute the engagement in commerce, because the parts were at rest and out of the stream of commerce).

Moreover, even assuming that PLAINTIFFS' remaining allegations are true and they were, while employed at LOVE PET, engaged in: "b) regularly making and receiving interstate telephone calls, text messages, and email inquiries[35]; e) collecting or receiving payments from interstate seasonal, interstate travelers (*e.g.* Florida's "snowbirds"); f) contacting seasonal, interstate travelers, and return customers to schedule visits for their pets; g) handling phone calls from out of state persons making reservations for their pets and sometimes arranging for their payments; and/or i) receiving payment for goods and services using interstate credit card transactions processed through DEFENDANTS' point of sale system and receiving tips from those interstate credit card transactions," as a matter of law, these allegations are insufficient to establish individual coverage under the FLSA.

For example, in *Dent v. Giaimo*[36], the court held that an employee at a medical office was not individually engaged in interstate coverage, so as to qualify for individual coverage under the FLSA, due to the fact that some of her employer's patients were not full-time residents of the state, and employee used telephone and facsimile machines to make long distance phone calls, and used internet and credit cards, where employer's

---

[35] In *DeArment v. Curtins, Inc.*, 790 F. Supp. 868 (D. Minn. 1992), the court held that employees who make telephone calls outside their state are engaged in interstate commerce. *Id*. at 870. However, the employees in *DeArment* worked at a telephone answering service, routinely placing calls to an out of state customer. *Id*. The *DeArment* Court relied on past holdings that employees of telephone answering services are in interstate commerce when out of state messages are relayed. *Id*. (citing *Bloemer v. Exell*, 112 F. Supp. 814 (D. KY. 1953). and *Schultz v. Conlan*, 60 Lab. Cas. (CCH) P32, 163 (N.D. Fla. 1969)). The Court distinguished between "any use by an employee of the mails and other channels of communication" and communication that was "a regular and recurrent part of his duties." *Id.* (citing 29 C.F.R. § 776.10(b)). The communication in *DeArment* was a regular and recurrent part of the employees' duties and therefore qualified as commerce under the Act. Here, PLAINTIFFS were pet groomers and utilization of the telephones or email system was incidental and not sufficient communication for individual coverage.
[36] 606 F.Supp.2d 1357, 1361 (S.D. Fla. 2009).

contact with patients was primarily local, employer did not solicit business from patients while they were out of state, and employee did not allege how much of her time was spent in contact with out-of-state insurance companies. The *Dent* court stated that "although some patients may have been residents of other states, defendant was not engaged in interstate commerce if his contact with those patients was primarily local. Defendant averred that he only works within Florida. Defendant is licensed in Florida and other states but his license is 'inactive' everywhere except Florida. There is no evidence to suggest that defendant solicited business from patients while they were out of state or that any contact with out of state patients was regular or recurrent."[37] The *Dent* court further stated that "[t]he fact that the Defendant Company provided services of an exclusively local nature is dispositive."[38] Similarly, here, PLAINTIFFS' allegations support that they only worked in Florida and they have made no allegations as to how much of their time was spent performing the alleged interstate activity to satisfy the "engaged in commerce" requirement. But, LOVE PET's evidence demonstrating its services were of an exclusively local nature is dispositive.

In addition, in *Schamis v. Josef's Table, LLC*[39], Judge Marra considered whether servers would be subject to individual coverage based primarily on the fact that they processed payment for food and accepted tips from customer credit cards. Judge Marra noted a difference between using a credit card to engage in interstate commerce, and using

---

[37] *Id.*
[38] *Id.*
[39] No. 12-80638-CIV, 2014 WL 1463494 at *3, (S.D. Fla. Apr. 15, 2014).

a credit card locally to collect payment for goods and services that were provided locally.[40] After reviewing the *Thorne* decision, the court determined that alleging that a server accepted a credit card for a meal prepared and delivered in Florida would not have a sufficient nexus with interstate commerce to support individual coverage.[41] The same result was reached in the case of *Martin v. Briceno*[42], which also involved servers accepting customer's credit cards for their meal purchases. In the *Martin* case, the court recognized that the servers, bartenders, hostesses, bus boys, and secretaries were not otherwise engaged in interstate commerce, and that they could not be found to be individually covered under the FLSA because their ". . . [d]uties involved processing credit card transactions and serving food and beverages."[43]

Clearly, PLAINTIFFS have failed to meet their burden of establishing that each of them were individually engaged in interstate commerce[44] and/or their factual allegations, accepted as true, are not enough to "state a claim to relief that is plausible on its face."[45] Consequently, it not necessary to address PLAINTIFFS' "willful" allegations because without demonstrating coverage under the FLSA, these allegations fail as well. Based upon the foregoing, PLAINTIFFS cannot establish individual coverage under the FLSA to establish subject matter jurisdiction.

---

[40] *Id.* at *4
[41] *Id.*
[42] No. 11-23228-CIV, 2014 WL 2587484 (S.D. Fla. June 10, 2014)
[43] *Id.* at *3. See also, *Joseph v. Nichell's Caribbean Cuisine, Inc.*, 862 F.Supp.2d 1309, 1312 (S.D. Fla. 2012) (granting motion to dismiss and holding that that usage of credit cards is "insufficient for the purposes of establishing FLSA coverage").
[44] *See Kitchings v. Fla United Methodist Children's Home, Inc.*, 393 F.Supp.2d 1282 (M.D. Fla. 2005).
[45] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

### IV. FOR THESE REASONS, LOVE PET'S OWNER IS NOT AN EMPLOYER UNDER THE FLSA

LOVE PET'S OWNER's liability is derivative and only arises if the FLSA applies to LOVE PET. The overwhelming weight of authority is that a corporate officer of a covered enterprise may be an employer along with the corporation and may be jointly and severally liable under FLSA.[46] Thus, since the FLSA does not apply to LOVE PET because it is not a covered enterprise, its OWNER cannot be held liable under the FLSA.

### V. CONCLUSION

WHEREFORE, DEFENDANTS respectively request that this Court dismiss all counts in PLAINTIFFS' Third Amended Compliant, with prejudice. Or, in the alternative, remand PLAINTIFFS' state law and unjust enrichment claims to state court and award DEFENDANTS, any other relief, including costs (under 28 U.S.C. § 1920), and such other relief DEFENDANTS are entitled to in law or equity.

---

[46] *Patel V. Wargo*, 803 F.2d at 637 (11th Cir. 1986) citing *Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir. 1983), *Accord Donovan v. Grim Hotel Co.*, 747 F.2d 966 (1st Cir. 1984) cert. denied, 471 U.S. 1124, 105 S.Ct. 2654, 86 L.Ed.2d 272 (1985) (*emphasis added*).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished this 5th day of November, 2018, via the Court's ECF/CM system to:

Shyam N.S. Dixit, Jr
Dixit Law Firm, PA
Suite 260
3030 N Rocky Pt Dr
Tampa, FL 33607
813/252-3999
813/252-3997 (fax)
shyamiedixit@gmail.com

Robert Leslie Vessel
Dixit Law Firm, PA
Suite 260
3030 N Rocky Pt Dr
Tampa, FL 33607
813-252-3999
813-252-3997 (fax)
rvessel@dixitlaw.com

**IURATO LAW FIRM, PL**

By: *s/Jenay E. Iurato*

**JENAY E. IURATO**
Florida Bar No. 0521981
10012 N. Dale Mabry Hwy., Suite 203
Tampa, Florida 33618
Telephone: 813.898.2818
Facsimile: 813.388.4572
Email: jenay@iuratolawfirm.com
*Counsel for Defendants*