UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRITTANY WESTLEY, ET AL.,

    Plaintiffs,

v.                                       Case No. 8:18-cv-172-T-24 TGW

LOVE PET GROOMING SALON,
INC., ET AL.

    Defendants.
_____/

**ORDER**

This cause comes before the Court on Defendants' Motion to Dismiss. (Doc. No. 36). Plaintiffs oppose the motion. (Doc. No. 41, 46). As explained below, the motion is granted in part and denied in part.

**I. Standard of Review**

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted). As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citation omitted). While the Court must assume that all of the allegations in the complaint are

true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." Id. (citation omitted). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

## II.  Background

Plaintiffs allege the following in their Third Amended Complaint (Doc. No. 34): Plaintiffs Brittany Westley, Rebecca LaMunyan, Sarah Coy, and Patricia Oropeza worked as pet groomers at Defendant Love Pet Grooming Salon, Inc. ("the Company") at different times between 2016 and 2018. Defendant Ingrid Kolarsick (also known as Ingrid Munoz; hereinafter "Munoz") has operational control over the Company and its finances. Plaintiffs contend that Defendants are their joint employer.

Plaintiffs have sued Defendants for violations of the Fair Labor Standards Act ("FLSA") and Florida's Minimum Wage Act. Plaintiffs also assert a claim for unjust enrichment. This case is before this Court based on federal question subject matter jurisdiction due to the FLSA claims.

## III.  Motion to Dismiss

In response to the Third Amended Complaint, Defendants move to dismiss this case for lack of subject matter jurisdiction. Specifically, Defendants argue that Plaintiffs cannot assert their FLSA claims, and therefore, the Court lacks federal question subject matter jurisdiction over this case.

Pursuant to 29 U.S.C. § 206(a) and § 207(a), the FLSA applies to two types of

employees. First, the FLSA provides individual coverage for employees engaged in commerce or in the production of goods for commerce. See Scott v. K.W. Max Investments, Inc., 256 Fed. Appx. 244, 247 (11th Cir. 2007). Second, the FLSA provides enterprise coverage for employees employed in an enterprise engaged in commerce or in the production of goods for commerce. See id. In order for an employee to bring an FLSA claim, the employee must demonstrate either individual or enterprise coverage. See id. Defendants argue that Plaintiffs cannot demonstrate either individual or enterprise coverage, and therefore, their FLSA claims fail. Accordingly, the Court will evaluate whether Plaintiffs have demonstrated either type of coverage.

### A. Enterprise Coverage

Plaintiffs can demonstrate that enterprise coverage applies if they show that the Company is an enterprise that: (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and" (2) has an annual gross volume of sales made or business done of at least $500,000. 29 U.S.C. § 203(s)(1)(A); see also K.W. Max, 256 Fed. Appx. at 247. Defendants argue that Plaintiffs cannot demonstrate that enterprise coverage applies because the Company has not had an annual gross volume of sales made or business done of at least $500,000 in 2014 through the first three quarters of 2018.

In support of their argument, Defendants submit the Company's 2014 through 2016 tax returns.[1] The Company's 2014 tax return shows gross sales of $9,843; the 2015 tax return shows

---

[1] Defendants are making a factual attack on the Court's subject matter jurisdiction with respect to enterprise coverage. Since factual attacks challenge the actual existence, in fact, of subject matter jurisdiction, the Court can consider evidence outside of the pleadings. See Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

gross sales of $82,663; and the 2016 tax return shows gross sales of $171,993. (Doc. No. 36-1). Additionally, Defendants submit Munoz's affidavit, as President of the Company, in which she states that the Company has not had an annual gross volume of sales made or business done of at least $500,000 in 2014 through the first three quarters of 2018. (Doc. No. 36-1).

Plaintiffs respond that Munoz's September 30, 2018 affidavit does not explain why the Company has not filed its 2017 tax return yet, given that the prior tax returns appear to have been filed in February or March of the relevant year. Furthermore, Plaintiffs point out that they filed a motion to compel with the magistrate judge, in which they sought the Company's point-of-sale data for 2016 to the present.

The magistrate judge granted the motion to compel, and this Court directed Plaintiffs to supplement their response to Defendants' enterprise coverage argument based on the newly produced documents.[2] In response, Plaintiffs state Defendants have produced documents relating to the Company's credit card sales only; they did not produce documentation for cash and non-credit card sales transactions. Plaintiffs contend that the Company's credit card transactions showed more than $300,000 in credit card sales for 2017 and more than $350,000 in credit card sales for 2018.

Given what Plaintiffs describe as an incomplete production (because Defendants did not account for cash and non-credit card sales transactions), Plaintiffs request an additional 90 days to conduct discovery on this issue. Alternatively, Plaintiffs contend that they stand on their

---

[2] Thereafter, Defendants filed a motion to file a reply brief to Plaintiffs' supplement. (Doc. No. 47). Plaintiffs opposed that motion. (Doc. No. 48). Because the Court grants Defendants' motion to the extent that they argue that enterprise coverage does not apply, the Court finds that a reply brief on this issue is unnecessary.

argument that they can demonstrate that individual coverage exists.

Upon consideration, the Court denies Plaintiffs' request for an additional 90 days to conduct discovery on this issue. Based on the record before this Court, Plaintiffs have not raised a genuine issue of material fact to support their contention that the Company had an annual gross volume of sales or business done of at least $500,000 in any of the relevant years. Therefore, the Court agrees with Defendants that Plaintiffs have not shown that enterprise coverage applies.

**B. Individual Coverage**

As previously stated, Plaintiffs can demonstrate that individual coverage applies if they show that they were either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce. See K.W. Max, 256 Fed. Appx. at 247. Clearly, as pet groomers, Plaintiffs were not engaged in the production of goods for commerce. As such, Plaintiffs must show that they were engaged in commerce.

In order "for an employee to be 'engaged in commerce' under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.,* transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.,* regular and recurrent use of interstate telephone, telegraph, mails, or travel." Thorne v. All Restoration Services, Inc., 448 F.3d 1264, 1266 (11th Cir. 2006). As pet groomers, Plaintiffs were not working for an instrumentality of interstate commerce. As such, Plaintiffs must show that they regularly used the instrumentalities of interstate commerce in their work;

5

they must show their regular and recurrent use of interstate telephone, telegraph, internet,³ mails, or travel.

This Court has further explained what it means for an employee to regularly use the instrumentalities of interstate commerce in their work:

> [T]he United States Supreme Court has provided that the legislative intent behind the FLSA's "engaged in commerce" clause is that it apply to activities constituting interstate commerce, not activities merely affecting commerce. Thus, the test to determine whether an employee is engaged in commerce "is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it." The employee has the burden of proving that individual coverage is applicable under the facts of his or her case.

Taffanelli v. Fla. Victory Outreach Center, Inc., 2017 WL 6947720, at *2 (M.D. Fla. Oct. 24, 2017)(internal citations omitted). The "court must focus its inquiry on the activities of the employee and not on the employer." Martin v. Briceno, 2014 WL 2587484, at *3 (S.D. Fla. June 10, 2014).

The Federal Regulations also offer some helpful explanation. For example:

> [E]mployees whose work involves the continued use of the interstate mails, telegraph, telephone or similar instrumentalities for communication across State lines are covered by the [FLSA]. This does not mean that any use by an employee of the mails and other channels of communication is sufficient to establish coverage. But if the employee, as a regular and recurrent part of his duties, uses such instrumentalities in obtaining or communicating information or in sending or receiving written reports or messages, or orders for goods or services, or plans or other documents across State lines, he comes within the scope of the [FLSA] as an employee directly engaged in the work of "communication" between the State and places outside

---

³Jenkins v. Anton, 2016 WL 7180248, at * 2 (Dec. 9. 2016)(stating that the internet is an instrumentality of interstate commerce).

the State.

29 C.F.R. § 776.10(b)(footnote omitted). Furthermore, if an employee regularly engages in activities in commerce, even though those activities are a small part of their duties, such employee will be covered by the FLSA. 29 C.F.R. § 776.3; see also Marshall v. Victoria Transportation Co., Inc., 603 F.2d 1122, 1124 (5th Cir. 1979)(stating "[n]o De minimis rule applies to the [FLSA]; any regular contact with commerce, no matter how small, will result in coverage").

In their Third Amended Complaint, Plaintiffs provide several examples of how they contend that they regularly used the instrumentalities of interstate commerce in their work. (Doc. No. 34, ¶ 23). Accordingly, the Court will evaluate these job duties to determine if Plaintiffs have properly alleged individual coverage under the FLSA.[4]

### 1.  Buying, Selling and Using Items that Moved in Interstate Commerce

Plaintiffs contend that they sold goods that had been moved in interstate commerce, such as pet bandanas and scarves. However, Plaintiffs provide no detail about where they (or the Company) purchased these goods from (*i.e.*, locally or out-of-state), nor do they state that they sold these goods to out-of-state customers. Further, if the goods that they sold were purchased locally, then it does not matter for purposes of individual coverage whether the goods had previously moved in interstate commerce. See Thorne, 448 F.3d at 1267 (finding that one who buys an item from a local store is not engaged in commerce even if the local store previously

---

[4] Defendants are making a facial attack on the Court's subject matter jurisdiction with respect to individual coverage. Since facial attacks challenge whether the plaintiff has properly alleged the existence of subject matter jurisdiction, the Court takes the allegations in the Third Amended Complaint as true for the purpose of this motion. See Lawrence, 919 F.2d at 1529.

purchased the item from an out-of-state wholesaler); Amadon v. Delivery Dudes, LLC, 2017 WL 7792707, at *4 (S.D. Fla. Mar. 3, 2017)(stating that "[i]n the context of individual coverage, when interstate goods . . . come to rest in a state before being sold within that state, those goods . . . lose their interstate quality").

Likewise, the goods that Plaintiffs sold came to rest at the Company. Therefore, even if Plaintiffs sold some of the goods to out-of-state customers, the sales would have occurred locally at the Florida location, and such would be a local transaction. As such, Plaintiffs' allegation that they sold goods that had moved in interstate commerce is not sufficient to support individual coverage.

Next, Plaintiffs contend that they bought and/or picked up grooming and cleaning supplies that had been moved in interstate commerce. Again, Plaintiffs do not allege that they ordered these supplies from out-of-state vendors. Without such additional detail, the fact that Plaintiffs used supplies that had been moved in interstate commerce is not sufficient to support individual coverage. See Amadon, 2017 WL 7792707, at *4 (stating that "when interstate . . . materials . . . come to rest in a state before being sold within that state, those . . . materials lose their interstate quality").

Next, Plaintiffs contend that they used materials that had been moved in interstate commerce, such as their grooming and cleaning supplies. Unlike enterprise coverage, which does consider whether the employees handle materials that have been moved in interstate commerce, individual coverage is not affected by the handling of such materials. See Polycarpe v. E&S Landscaping Service, Inc., 616 F.3d 1217, 1220–21 (11th Cir. 2010). As such, Plaintiffs' allegation that they used materials that had moved in interstate commerce is not sufficient to support individual coverage.

### 2. Bank Deposits and Credit Card Transactions

Next, Plaintiffs point out that they made bank deposits. However, making bank deposits is not sufficient to support individual coverage. See Severin v. Pasha's Restaurant, Inc., 2007 WL 967021, at *2 (S.D. Fla. Mar. 22, 2007).

Next, Plaintiffs point out that they received payments for goods and services via interstate credit card transactions. However processing interstate credit card transactions is not sufficient to support individual coverage. See Schamis v. Josef's Table, LLC, 2014 WL 1463494, at *4 (S.D. Fla. Apr. 15, 2014); Martin, 2014 WL 2587484, at *3; Thorne, 448 F.3d at 1267; Joseph v. Nichell's Caribbean Cuisine, Inc., 862 F. Supp.2d 1309, 1313 (S.D. Fla. 2012).

Additionally, Plaintiffs point out that they accepted credit card payments from out-of-state customers when they came to Florida and had their pets groomed. This too is insufficient to support individual coverage. See Mayo v. Jean Nicole Hair Salons, Inc., 2015 WL 4751202, at *3 (M.D. Fla. Aug. 11, 2015).

### 3. Servicing Out-of-State Clients

Next, Plaintiffs point out that they often groomed pets owned by seasonal, interstate travelers (*e.g.*, Florida's "snowbirds"). However, this is immaterial for individual coverage, as the grooming occurred in Florida. See Joseph, 862 F. Supp.2d at 1314; Martin, 2014 WL 2587484, at *3.

### 4. Interstate Communications

Next, Plaintiffs argue that their interstate communications are sufficient to support individual coverage. Specifically, they allege that they regularly made and received interstate telephone calls, text messages, and email inquiries in order to schedule services for pets of

9

seasonal, out-of-state customers. The Court is persuaded that Plaintiffs have sufficiently alleged individual coverage based on their interstate communications that they have alleged occurred "regularly."

Courts have found that regularly soliciting out-of-state business or regularly communicating with out-of-state customers is sufficient to show individual coverage. See Lopez v. Pereyra, 2010 WL 335638, at *6 (S.D. Fla. Jan. 29, 2010)(pointing out that the plaintiff made telephone calls on a weekly basis to customer-patients located outside of Florida); Lopez v. Marlborough House, Inc., 2013 WL 5520061, at *2 (S.D. Fla. Oct. 3, 2013)(pointing out that the plaintiff regularly used a phone to communicate with out-of-state customer-tenants that had a condominium unit with maintenance issues in Florida); Amadon, 2017 WL 7792707, at *3 (stating that using the phone to communicate with out-of-state customers could be sufficient to establish individual coverage); Mayo, 2015 WL 4751202, at *2 (considering whether the plaintiff had alleged that her contact with out-of-state customers occurred on a regular and recurrent basis).

Defendants respond by pointing to the case of Dent v. Giaimo, 606 F. Supp.2d 1357 (S.D. Fla. 2009). In Dent, the plaintiff worked as a medical assistant, and her duties included "checking patients in and out of their appointments, verifying insurance coverage, answering the phone, filing, faxing and other clerical duties." See id. at 1358. One of the issues in the case was whether the plaintiff could show that individual coverage applied. See id. at 1360–61.

The plaintiff argued that about 70% of the defendant's patients were not Florida residents and that she regularly used the telephone, internet, and fax machine to contact out-of-state insurance companies. See id. The court found that the plaintiff had not shown that individual

coverage applied. See id. at 1361.

The court found that the fact that about 70% of the defendant's patients were not Florida residents was not controlling, because: (1) there was no evidence to suggest that the defendant solicited business from patients while they were out of state; and (2) there was no evidence of any regular or recurrent contact with out-of-state patients. See id. Additionally, the court found that the plaintiff had not shown that she, personally, contacted out-of-state insurance companies on a regular basis. See id.

In contrast to Dent, Plaintiffs have alleged that they regularly made and received interstate telephone calls, text messages, and email inquiries in order to schedule services for pets of seasonal, out-of-state customers. This is sufficient for this Court to find that individual coverage had been adequately pled. However, Plaintiffs will eventually have to prove that they each engaged in regular and recurrent interstate communications in order to prove their FLSA claims. Accordingly, the Court denies Defendants' motion to dismiss to the extent that they argue that Plaintiffs have failed to adequately plead individual coverage.

### C. FLSA Claims Against Munoz

Defendants argue that Munoz's FLSA liability is derivative of the Company's liability, and therefore, Plaintiffs' FLSA claims fail against her. However, the Court has denied Defendants' motion to dismiss based on individual coverage, and as such, the Court finds that the FLSA claims against Munoz are not due to be dismissed.

## IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1)   Defendants' Motion to File a Reply (Doc. No. 47) is **DENIED**.

(2)   Defendants' Motion to Dismiss (Doc. No. 36) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** to the extent that there is no enterprise coverage; otherwise, the motion is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this ___ day of January, 2019.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record